FRED SCHNEIDER, PLAINTIFF-APPELLEE, v. RUTHER-
FORD TAXI SERVICE, INC., WILLIAM MARTIN AND
WILLIAM F. FREED, DEFENDANTS-APPELLANTS.

Argued January 19, 1944—Decided April 24, 1944.

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and
COLIE.

For the plaintiff-appellee, *West, Hein & Wittman* (*Edward
O. West,* of counsel).

For the defendants-appellants Rutherford Taxi Service,
Inc., and William Martin, *Reginald A. Creighton* and *John
C. Grimshaw* (*David E. Feldman,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The plaintiff recovered a judg-
ment for personal injuries in the Bergen County Court of
Common Pleas against all three defendants, the Rutherford
Taxi Service, Inc., William Martin and William F. Freed.
The two first named defendants have appealed from the judg-
ment and that appeal is before us. The third defendant,
Freed, has not appealed. At the time plaintiff was injured
he was a passenger for hire in the car of the Rutherford Taxi
Service, Inc.; defendant Martin was the driver of the car.

The appellants urge that the court erred (1) in declining
to enter judgment of nonsuit on their motion; (2) in reject-

ing a motion for a direction of verdict for these two defendants. A further argument is made for reversal on the ground that the verdict of $5,000 is excessive and resulted from mistake, passion, prejudice or partiality. The last ground may not be entertained as a reason for reversing the judgment on appeal. If the verdict was faulty in any of the particulars mentioned it should have been reviewed by a rule to show cause before the trial court.

The testimony in the case discloses that the plaintiff, en route to work, became a passenger of the Rutherford Taxi Service, Inc., at about 5:30 A. M. on March 22d, 1942. The morning was dark, the weather inclement. In the course of the journey the car came to an "intersection" of River Road and Park Avenue in Lyndhurst, New Jersey. It is not an intersection in the ordinary sense. River Road runs north and south and Park Avenue runs into River Road from the southeast and then converges with it without crossing it at any point. The taxi, with the plaintiff as passenger, had come from a southerly direction on Park Avenue intending to enter River Road and continue thereon to the south. The defendant, Freed, was driving his automobile in a northerly direction on River Road and intended to turn into Park Avenue. He did not succeed in making the turn properly. The result was that his car smashed into the right front side of the taxi.

The plaintiff, in his testimony, was able to offer very little information on what occurred except the bare happening of the accident.

To the questions propounded to him by his attorney, he replied that he thought the cab in which he rode had "very dim lights;" that the weather was dark and drizzling; that he saw "no part of the accident;" that after the happening he found himself lying in the back of the car, dazed and bleeding. On cross-examination he stated his opinion to be that the driver, Martin, was operating the taxicab carefully; that he did not know whether or not the taxi stopped at the intersection before entering River Road or whether the taxi traveled along the right side of the roadway on Park Avenue. He further said, his mind having been refreshed by a state-

ment signed by him after the accident, that the taxi reached the intersection and that it was on the right side of Park Avenue roadway. In answer to a question whether the taxi came to a full stop before entering the intersection, his reply was that he "couldn't answer."

The defendant, William Martin, called as plaintiff's witness, said that when he reached the so-called intersection he stopped, looked, was ready to start again when he saw a car coming north on River Road, about to enter Park Avenue; that he, Martin, was on the right side of the Park Avenue road; that the car on River Road (it was operated by defendant Freed) came towards him until almost "in line;" that this car then turned and hit the taxi which he claims was then standing still. He described the operation of the Freed car: that it proceeded as though the purpose was to continue north on River Road; that when it reached a point almost opposite the taxicab, which stood in Park Avenue, facing River Road, the Freed car turned quickly and crashed into the taxi. On cross-examination the testimony was that the taxicab had the "driving lights" on.

The defendant, William Freed, was called as a plaintiff's witness. He said that at the time the visibility "wasn't too good." Asked if he saw a car coming toward him he replied: "All I saw were the lights, very dim lights." He meant by that, we infer, that he knew the dim lights were on an automobile. He said further that the taxicab was "hogging the center of the road;" that its left wheels were over the center line; that the cab "was rolling out toward me and I figured if I turned right [into Park Avenue] I was going to crash * * * decided to swing back to River Road, figured I couldn't make that and felt that I could get between his car [the taxicab] and DeMassey's ramp to avoid the accident." Our understanding of this testimony is that Freed intended making the slight turn necessary to enter Park Avenue but seeing the lights on the taxi, on second thought, considered it better to continue along River Road and with another change of mind, believed that he could pass between the taxicab and the curb to the right of the cab. He failed in the attempt. Freed admitted that the intersection "was a bad

spot" and that his description of the taxicab as "rolling towards him," in his language, meant a speed of twenty miles an hour. Park Avenue at this point, according to his knowledge, was twenty-five feet wide. He reiterated his statement that the taxicab was moving towards him and that its wheels were over the center line. In response to a question as to why he did not enter Park Avenue between the approaching car and the street curb to his right, he answered: "I just saw his lights when it was too close for me to turn, just the dim lights there, and they weren't too bright and I didn't get time to turn." His attention on cross-examination was directed to a statement he had previously made in the District Court. He admitted that previously he had said, when asked whether or not the taxicab had come to a stop, "I couldn't say because all I saw were his headlights. I don't know whether he was going or whether he had stopped." Yet in the case under review, when the court asked Freed whether it was true that he didn't know whether the taxicab was going or standing still, he answered: "Personally, I believe he was rolling, honestly believe he was rolling." Again, in the next breath, he changed his statement on cross-examination and admitted that he didn't know whether the taxi was moving or had stopped. On further cross-examination he reaffirmed that what he had said in the District Court, namely, that he didn't know whether the taxi was moving or not at the time of the collision, was correct and that he was willing "to stand by" that answer. Freed was unable to say how far off was the taxicab when he first observed its lights.

The motion for nonsuit was rested on the proposition that the plaintiff had failed to establish any negligence on the part of the defendants Rutherford Taxi Service, Inc., and Martin, its driver, "in so far as his allegations are set forth in the complaint." The charges of negligence are that the taxicab was operated in a "careless, reckless and negligent manner at a high and excessive rate of speed without proper brakes and mechanical devices, without maintaining a proper lookout for other vehicles on the highway." No evidence was offered to support these charges. It was further alleged that the taxicab was traveling on the wrong or left-hand side of

the roadway, failing to give warning of its approach, failing to have same under proper control with defective mechanical parts, &c. No evidence to prove these shortcomings was supplied. Only one phase of negligence alleged needs any discussion. In passing on a motion for nonsuit the court must regard the plaintiff's testimony in an aspect most favorable to the claim, together with its proper and legitimate inferences. The witness, Freed, maintained that the left front and rear wheel of the cab were over the center line of Park Avenue at the time of the happening. He does not say whether the encroachment on the left side of the road by the taxicab amounted to an inch or a foot or any space. He does say that Park Avenue was wide enough to accommodate four automobiles abreast, i. e., two on the right and two on the left. We do not think there was sufficient in Freed's statement that the taxicab was over the center line or "hogging the center," as he put it, to justify the conclusion that the appellants were guilty of a negligence that was the proximate cause of the collision. There was, in our view, no fact hypothesis in the evidence that justified a finding of negligence against the owner of the taxicab or its driver.

The judgment under review should be reversed. A new venire will be allowed, costs to abide the event.